# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re:                                                                                          Case No. 19-30872-CLH
                                                                                                Chapter 13
CHARLES BENNETT,

    Debtor.

## MEMORANDUM OPINION AND ORDER

This Chapter 13 case is before the Court on the Motion to Dismiss (Doc. 58) (the "Motion") and the Application for Superpriority Administrative Expense Claim (Doc. 65) (the "Application") filed by Mutual Savings Credit Union ("Mutual Savings"). The Court held an evidentiary hearing on September 19, 2023, at which time the Court took the matter under advisement. Upon consideration of the evidence presented and the arguments of counsel, and for the reasons set forth below, the Motion and the Application are denied. The Court will set a hearing, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, on the issue of whether the Court's order granting the Debtor's Motion to Modify Plan should be modified with respect to Mutual Savings.

### I. Jurisdiction

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by the United States District Court for the Middle District of Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O).

## II. Facts and Procedural History

On March 29, 2019, Charles Bennett (the "Debtor") filed a petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 1).[1] In Schedule A/B, the Debtor listed a 2017 Chevrolet Impala (the "Vehicle") and valued it at $14,875.00. *Id*. In Schedule D, the Debtor listed Mutual Savings as a secured creditor with respect to the Vehicle, stating that the amount owed was $24,521.00. *Id*. The Debtor's initial plan proposed monthly pre-confirmation adequate protection payments to Mutual Savings in the amount of $148.00, based on a valuation of $14,875.00. (Doc. 2). The initial plan further provided for post-confirmation specified monthly payments to Mutual Savings in the amount of $506.00, based on a contractual balance of $24,521.00 and an interest rate of 6.25%. *Id.*

On May 9, 2019, counsel for Mutual Savings filed a Notice of Appearance and Request for Service (the "Notice of Appearance"), requesting service "of any and all original and amended notices, pleadings, plans, reports and/or documents of any kind" filed in the Debtor's bankruptcy case. (Doc. 13). On May 31, 2019, Mutual Savings objected to confirmation of the Debtor's initial plan, asserting that the plan proposed improper adequate protection on Mutual Savings' claim due to an undervaluation of the Vehicle. (Doc. 22).

In response to multiple objections, including the objection from Mutual Savings, the Debtor filed an amended plan (the "Plan"), which increased the proposed monthly pre-confirmation adequate protection payments to Mutual Savings to $192.00, based on an increased valuation of $19,175.00. (Doc. 25). With respect to the claim of Mutual Savings, the post-confirmation specified monthly payments, the contractual balance, and the interest rate did not

---

[1] All references to the "Code" or the "Bankruptcy Code" are to 11 U.S.C. §§ 101-1532.

change. *Id.* Based on the amendments in the Plan, Mutual Savings withdrew its objection to confirmation. (Doc. 26). The Plan was confirmed by order dated June 21, 2019. (Doc. 28).

On January 17, 2023, the Debtor, through his attorney, filed a Motion to Modify Plan (Doc. 49) (the "Motion to Modify"). The Motion to Modify was filed pursuant to the negative notice provisions in Local Bankruptcy Rule 9007-1. The Certificate of Service attached to the motion indicated that the Motion to Modify was sent via first class mail to counsel for Mutual Savings, but it was not served on Mutual Savings directly. The Motion to Modify attached an amended plan that provided for the surrender of the Vehicle to Mutual Savings, but it failed to describe the reason for the surrender. On February 11, 2023, following the expiration of the negative notice period, an order approving the Motion to Modify (the "Modification Order") was entered automatically. (Doc. 50).

On April 20, 2023, Mutual Savings filed the Motion, seeking dismissal of the Debtor's case due to an unreasonable delay in surrendering the Vehicle. (Doc. 58). Additionally, on June 14, 2023, Mutual Savings filed the Application, seeking allowance of a superpriority administrative expense claim in the amount of $11,595.82 due to the Debtor's inability to effectuate a surrender of the Vehicle to Mutual Savings. (Doc. 65). In advance of the hearing on the Motion and Application, the parties filed briefs in support of their respective positions. (Docs. 69 & 79). The Court held an evidentiary hearing on September 19, 2023, and heard testimony from the Debtor and from Tammy Ryans, the Collections Clerk for Mutual Savings. The Court found the Debtor and Ms. Ryans to be credible and forthright witnesses. At the hearing, the Debtor testified regarding the events that precipitated the filing of the Motion to Modify to surrender his interest in the Vehicle and his inability to deliver possession of the Vehicle to Mutual Savings. The Court

also analyzed the documents offered by the Debtor and Mutual Savings, which were admitted into evidence at the hearing without objection.

The Debtor testified that on June 4, 2022, he returned home from work to discover that the Vehicle was missing from his driveway. He called the police to report the Vehicle as stolen. The police initially did not issue a report because the Debtor had no corroborating witnesses. Through the use of OnStar, the Debtor learned that the Vehicle was in Detroit, Michigan. He determined that the Vehicle had been taken by his wife, Renita Bennett, or her son. On June 22, 2022, the police issued a report indicating an offense of "Theft 1st – Motor Vehicle" under Ala. Code § 13A-8-3 (378). *See* Debtor's Exhibit 3.

At the time the Vehicle was taken, the Debtor maintained insurance on the Vehicle through Allstate. The Debtor made a claim on the Allstate insurance policy, asserting that the Vehicle had been stolen. When the Debtor made the claim, he was current on the premium payments to Allstate. Allstate denied the claim, however, stating that because the Vehicle had been taken by his wife or her son, it was not an insurable incident. When the Debtor determined he would not be able to retrieve the Vehicle, he allowed the insurance policy to lapse.

The Debtor testified that he did not notify Mutual Savings of the missing Vehicle in June of 2022. At the time the Vehicle was taken, however, the Debtor called his bankruptcy attorney to advise of the incident. When counsel for Mutual Savings pressed about timing issues related to notifying Mutual Savings, the Debtor testified that he told his bankruptcy attorney what happened to the Vehicle and assumed his bankruptcy attorney was handling it.

The Debtor filed a *pro se* Complaint for Divorce against Renita Bennett (the "Complaint") in the Circuit Court of Dallas County, Alabama, resulting in the entry of a Final Decree of Divorce (the "Divorce Decree") on March 9, 2023. *See* Debtor's Exhibit 1. The Debtor testified that he

had to serve the Complaint by publication. The Divorce Decree provided for the award of the Vehicle to Renita Bennett. The Debtor testified that he did not receive legal advice regarding the divorce and did not recall why the Vehicle was awarded to Renita Bennett in the Divorce Decree.

Apart from the issues related to Mutual Savings, the Debtor has fully performed under the Plan, as modified pursuant to the Modification Order. At the evidentiary hearing, Jessica Trotman, staff attorney for the Chapter 13 Trustee, confirmed that the Debtor had made all payments required, but that the balance remaining on the Mutual Savings claim – to the extent not disposed of by the Modification Order – totaled $13,208.17.

### III. Legal Analysis and Conclusions of Law

**A. Dismissal is inappropriate under the circumstances of this case.**

Mutual Savings seeks dismissal of the Debtor's case in connection with the Debtor's failure to deliver possession of the Vehicle. Section 1307 of the Bankruptcy Code provides, in relevant part:

> (c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including –
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors . . .

11 U.S.C. § 1307(c)(1). Mutual Savings contends that the Debtor's failure to deliver possession of the Vehicle to Mutual Savings constitutes an unreasonable delay that warrants dismissal of the Debtor's case.

When the Vehicle was taken, the Debtor promptly reported the incident to his bankruptcy attorney, and he relied on his bankruptcy attorney's advice when seeking modification. The case law in this district supports the strategy of modifying the plan to surrender the Vehicle under the circumstances of this case. *See In re Scarver*, 555 B.R. 822, 836-37 (Bankr. M.D. Ala. 2016) (permitting post-confirmation surrender of collateral and reclassifying any deficiency balance as unsecured); *In re Moorer*, Case No. 15-32592-DHW, 2017 WL 3499280, at *2 (Bankr. M.D. Ala. Aug. 15, 2017) (resolving district split and following *In re Scarver* to allow for post-confirmation modification to surrender collateral and reclassify the claim); *In re Boley*, Case No. 15-31811-DHW, 2016 WL 155700, at *3 (Bankr. M.D. Ala. Jan. 12, 2016) (finding the debtor lacked "deceitful intent" despite incorrectly describing the disposition of the collateral and that debtor did not have possession of the collateral to effectuate delivery of the collateral following the post-confirmation surrender). Mutual Savings asserts in its brief that the timing of the Motion to Modify and the failure to describe the circumstances leading to the surrender hindered its ability to recover the Vehicle. Without limitation, Mutual Savings asserts that it was prejudiced by the Debtor's failure to disclose key facts, namely that the Vehicle had been taken by the Debtor's wife or her son seven months prior and that the Debtor no longer knew where the Vehicle was located. However, Mutual Savings has not sought reconsideration of the Modification Order, and the issue is not presently before the Court.

Furthermore, the Debtor has completed all payments under the modified Plan leaving only the Motion and the Application as obstacles to a discharge. This has been no small feat, as the Debtor has paid $29,099.94 to the Chapter 13 Trustee, including payments to Mutual Savings totaling $16,030.02. Debtor's Exhibit 2.

The Court finds persuasive the case of *In re Dean,* Case No. 6:04-BK-11817-ABB, 2008 WL 4572390, at *2 (Bankr. M.D. Fla. Feb. 19, 2008), in which the bankruptcy court denied a motion to dismiss when the debtor made all plan payments but faced unpaid federal tax liabilities associated with a post-petition IRS audit. *See In re Dean*, Case No. 6:04-BK-11817-ABB, 2008 WL 4572390, at *2 (Bankr. M.D. Fla. Feb. 19, 2008). The court reasoned that the tax liability incurred through an involuntary assessment did not demonstrate a willful intent to prejudice creditors. *Id.* Similarly, the Debtor in this case made all required payments under his Chapter 13 plan and attempted to deal with an unforeseen post-petition event in an appropriate manner. There is no indication that the Debtor – in seeking modification based on a post-petition event that was beyond his reasonable control – intended to prejudice Mutual Savings. Under these circumstances, the Court finds that cause does not exist to dismiss the Debtor's case under section 1307(c)(1). Accordingly, the Motion is denied.

**B. Mutual Savings is not entitled to a superpriority administrative expense claim.**

Mutual Savings asserts that, in the absence of dismissal, it should be granted a superpriority administrative expense claim for amounts not paid on its claim, relying on section 507(b) and an alleged failure of adequate protection with respect to its lien on the Vehicle. Section 507(b) provides:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b). Section 507(a)(2) provides:

> (a) The following expenses and claims have priority in the following order:
>
> . . .
>
> > (2) Second, administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343),[1] and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a)(2). Section 503(b) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A).

Reading these sections together, a claimant must satisfy a three-tier test before it will be entitled to a superpriority administrative expense claim under section 507(b). *In re Cason*, 190 B.R. 917, 923 (Bankr. N.D. Ala. 1995) (citing *Ford Motor Credit Company v. Dobbins,* 35 F.3d 860, 865 (4th Cir.1994)). First, the claimant must have been provided adequate protection prior to the request for a superpriority administrative expense claim, and this protection must ultimately fail or be inadequate to meet the creditor's needs under section 361. *Cason*, 190 B.R. at 923. Second, the claimant must have a claim that is allowable under section 507(a)(1), which, in turn requires allowance of the claim under section 503(b). *Id.* Third, the claimant must establish that its claim arose under the automatic stay of section 362; from the use, sale, or lease of the collateral under section 363; or the granting of a lien under section 364(d). *Id.*

Mutual Savings' request for a superpriority administrative expense claim fails on the first prong. In support of the Application, Mutual Savings relies on the *Cason*, *DeSardi*, and *Johnson* opinions. *Cason*, 190 B.R. at 923; *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006); *In*

- 8 -

*re Johnson*, 247 B.R. 904 (Bankr. S.D. Ga. 1999). Based on the facts established at the evidentiary hearing, the *Cason* and *DeSardi* opinions undermine Mutual Savings' position, as these opinions place procedural and temporal limits on the applicability of section 507(b), particularly regarding the requirement that the claimant must have been provided adequate protection and that the adequate protection must have failed. *Cason*, 190 B.R. at 923; *DeSardi*, 340 B.R. at 804. As the court correctly noted in *In re Cason*, "[a]dequate protection payments are designed to compensate a holder of a secured claim for any decline in the value of its collateral **post petition** and **preconfirmation**." 190 B.R. at 928 (emphasis added). Other opinions reinforce this concept. *See In re Severson*, 53 B.R. 8, 10 (Bankr. D. Ore. 1985) (holding that adequate protection relates to the period of time between the filing of the petition and confirmation); *In re Campbell*, 205 B.R. 288, 289-90 (Bankr. D. Col. 1997) (specified monthly payments under a confirmed plan are not "adequate protection" payments that would give rise to a superpriority administrative expense claim under section 507(b), rendering section 507(b) inapplicable post-confirmation.).[2] While the court in *In re DeSardi* appears to confer superpriority administrative claim status on a secured creditor, it does so only with respect to the adequate protection payments made until attorneys' fees have been paid in full and post-confirmation specified monthly payments to the secured creditor have commenced. 340 B.R. 804.

In this case, Mutual Savings received pre-confirmation adequate protection payments from May 2019 to January 2020 and then received post-confirmation specified monthly payments from

---

[2] While the Eleventh Circuit has affirmed the award of a superpriority administrative expense claim under section 507(b) to a creditor whose collateral was used by a Chapter 11 debtor post-petition, it did so only in the context of use of the collateral after entry of a consensual adequate protection order, not in the context of use after confirmation of a plan that provided for treatment of the creditor's secured claim. *Bonapfel v. Nalley Motor Trucks, a Division of Nalley Chevrolet (In re Carpet Center Leasing Co., Inc.)*, 991 F.2d 682, 684 (11th Cir. 1993). Likewise, the United States Bankruptcy Court for the Middle District of Florida allowed a creditor's request for a superpriority administrative expense claim under section 507(b) related to an uninsured vehicle destroyed in a collision, but it did so only under a pre-confirmation stipulation and consent order granting the creditor adequate protection while the debtors worked toward confirmation of a Chapter 13 plan. *In re Mendez*, 259 B.R. 754, 756 (Bankr. M.D. Fla. 2001).

February 2020 to January 2023. *See* Debtor's Exhibit 2. In other words, adequate protection payments to Mutual Savings ceased over two years before the Vehicle was taken. Accordingly, section 507(b) does not provide for an administrative expense claim under the facts of this case.

Mutual Savings also relies on the *Johnson* opinion in support of its position. In *In re Johnson*, the court held that while a debtor – if acting in good faith – may modify a Chapter 13 plan to surrender collateral and reclassify the creditor's resulting claim as unsecured, the creditor may be entitled to a superpriority administrative expense claim for the lost value of the collateral. 247 B.R. at 909-910 (Bankr. S.D. Ga. 1999). This holding has not been widely followed. To the contrary, on this issue, several courts have disagreed with or declined to follow *In re Johnson*. *See, e.g., In re Adams*, 275 B.R. 274, 281-283 (Bankr. N.D. Ill. 2002) (creditor possessing only a prepetition claim could not satisfy a two-part test to determine whether it was entitled to an administrative expense claim since (1) it did not contract with a debtor-in-possession and (2) the transaction could not benefit the estate because it occurred prior to the creation of the bankruptcy estate).

Considering the guidance from the Eleventh Circuit that administrative expense priority of any type should be narrowly construed, the Court declines to follow the approach set forth in *Johnson*. *See Varsity Carpet Services, Inc. v. Richardson (In re Colortex Industries, Inc.)*, 19 F.3d 1371, 1377 (11th Cir. 1994). Mutual Savings seeks administrative expense priority based on prepetition financing for which the Debtor's Plan provided adequate protection payments until confirmation of the Plan, after which the Debtor received specified monthly payments agreeable to Mutual Savings. The cases cited by Mutual Savings with respect to adequate protection do not cover post-confirmation specified monthly payments. *See Cason*, 190 B.R. at 928; *DeSardi*, 340 B.R. at 804. The Court concludes that Mutual Savings has not met its burden of establishing

entitlement to a superpriority administrative expense claim under section 507(b). Accordingly, the Application is denied.

### C. Mutual Savings may be entitled to an amendment to the Modification Order.

Mutual Savings asserted in its pleadings and at the hearing that had it been properly served with the Motion to Modify in a timely manner, it would have been able to better protect its security interest in the Vehicle. At the hearing, the Debtor testified that while he notified his bankruptcy attorney and his insurance carrier of the missing Vehicle at the time it was taken, he did not notify Mutual Savings. Moreover, the docket indicates that the Motion to Modify was not filed until nearly seven months after the Vehicle was taken, and even then, the Motion to Modify was not served directly on Mutual Savings pursuant to Rule 7004(b) of the Federal Rules of Bankruptcy Procedure. Furthermore, the Motion to Modify, as prepared and filed by the Debtor's bankruptcy attorney, did not describe the reason for the proposed surrender of the Vehicle, specifically that it had been taken hundreds of miles away several months prior. Because the Motion to Modify was filed on negative notice, the Modification Order was entered automatically, by a system-generated order, without a hearing.

The evidence was not fully developed on the issue of notice related to the Motion to Modify, and Mutual Savings has not specifically sought relief from the Modification Order. However, the pleadings and evidence create concerns regarding whether Mutual Savings was afforded due process with respect to the Motion to Modify, particularly because the Modification Order was entered automatically on negative notice. A judgment generally is void if the court "acted in a manner inconsistent with due process of law." *In re Le Ctr. on Fourth, LLC*, 17 F.4th 1326, 1334 (11th Cir. 2021) (quoting *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (internal quotation marks omitted). The court may grant relief from a judgment "'in the rare

Case 19-30872    Doc 78    Filed 11/30/23    Entered 12/11/23 09:53:28    Desc Main
Document      Page 11 of 13

instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.'" *Bainbridge v. Governor of Fla.*, 75 F.4th 1326, 1334–36 (11th Cir. 2023) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)).

Rule 60(b) of the Federal Rules of Civil Procedure – as made applicable in bankruptcy cases pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure – provides that a court may relieve a party from a final order upon motion. However, Rule 60(b) "does not prohibit a bankruptcy judge from reviewing, sua sponte, a previous order." *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 740 (9th Cir. 1990) (citing 11 U.S.C. § 105(a)). Although Rule 60(b) "refers to relief from final orders, it does not restrict the bankruptcy court's power to reconsider any of its previous orders when equity so requires." *See id.* The court may raise issues sua sponte under Rule 60(b) when a party has sought a separate type of relief. *See Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1464 (9th Cir. 1993) (raising Rule 60(b) issues sua sponte when the government filed a motion to reopen debtor's case). When reconsidering a prior order sua sponte under Rule 60(b), courts should afford the potentially affected parties an additional opportunity to be heard. *See In re Jack Kline Co, Inc.*, 440 B.R. 712, 729 (Bankr. S.D. Tex. 2010) (a court may use its inherent power to raise Rule 60(b) sua sponte, but in doing so, the court must provide written notice and a hearing to the parties of its reconsideration) (citing *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008)).

Based on the facts established through the pleadings and at the hearing, the Court hereby raises, sua sponte, Rule 60(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure. Accordingly, the Court will set a separate

hearing to allow the parties to appear and be heard as to whether Mutual Savings was deprived of due process with respect to the Modification Order.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the Debtor has substantially complied with the terms of his confirmed plan, as modified. Therefore, the Court denies the Motion under 11 U.S.C. § 1307(c). The Court further finds that the facts of this case do not support allowance of a superpriority administrative expense claim. Therefore, the Court denies the Application under 11 U.S.C. § 507(b). Additionally, the Court questions whether Mutual Savings may not have been afforded due process with respect to the Motion to Modify and the Modification Order. Therefore, the Court will conduct a separate hearing on its sua sponte reconsideration of the Modification Order under Rule 60(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure. The Court will hold a status conference on the reconsideration of the Modification Order on **December 14, 2023, at 11:00 a.m.**, at the United States Bankruptcy Court, Montgomery, Alabama, Courtroom 4D.

Done this 30th day of November, 2023.

/s/ Christopher L. Hawkins
Christopher L. Hawkins
United States Bankruptcy Judge

c: Debtor
Michael Brock, Attorney for Debtor
Michael Harrison, Attorney for Mutual Savings Credit Union
Mutual Savings Credit Union
Sabrina McKinney, Trustee